IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN SCHILD,

                Petitioner,

     v.                                CASE NO. 03-3057-SAC

FEDERAL BUREAU OF PRISONS, et al.,

                Respondents.

**O R D E R**

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. §2241. The court has examined the record and enters the following findings.

**Background**

Petitioner was sentenced to a term of twelve months and one day following his guilty plea to a charge of bank fraud in violation of 18 U.S.C. 1344. At the sentencing on December 15, 2002, the district court recommended to the Bureau of Prisons (BOP) that petitioner be allowed to serve the sentence in a community corrections center or another facility which would allow him to participate in work release.

On December 13, 2002, the Department of Justice Office of Legal Counsel issued an opinion concerning the BOP's practice of initially placing in community confinement centers (CCCs) certain

offenders sentenced to imprisonment. Because community confinement has not been interpreted as imprisonment for purposes of implementing a sentencing order, the opinion concluded that the BOP lacks the authority to place an offender in community confinement or a halfway house for service of sentence.

In response, Deputy Attorney General Larry Thompson notified Kathleen Hawk Sawyer, Director of the BOP, that the Bureau should transfer to prison facilities all federal offenders who (1) were residing in CCC facilities and (2) had more than 150 days remaining on their terms of imprisonment. The BOP also adopted a new policy that it no longer would comply with judicial recommendations for placement of offenders sentenced to imprisonment in a CCC. Accordingly, the BOP advised petitioner on December 23, 2002, that because he had more than 150 days remaining in his term of confinement, he would be redesignated to a federal facility.

In January 2003, petitioner filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. That motion was denied. <u>United States v. Schild</u>, 2003 WL 260672 (D. Kan. 2003).

Petitioner then commenced this action for relief pursuant to 28 U.S.C. § 2241.

**Discussion**

Petitioner seeks relief on the grounds that his placement in a prison facility violated his right to due process, ex post

2

facto principles, and equal protection. He also asserts the change in BOP policy violated the Administrative Procedure Act.

In order to obtain habeas corpus relief, petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's challenge is cognizable as an attack on the execution of his sentence. See Cohn v. Fed. Bureau of Prisons, 302 F.Supp.2d 267, 270 (S.D.N.Y. 2002)(finding federal prisoner's challenge to BOP's policy concerning CCC placement was cognizable under § 2241); Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000)(state prisoner's challenge to transfer him to out-of-state facility cognizable under § 2241).

Petitioner first claims the decision to transfer him to a prison facility violated his right to due process. In order to assert such a claim, petitioner must demonstrate the infringement of a protected right. However, a lawfully-sentenced prisoner has no right to placement in a particular prison, and "the Due Process Clause in and of itself [cannot] protect a duly convicted prisoner against transfer from one institution to another within the ... prison system." Meachum v. Fano, 427 U.S. 215, 225 (1976). The governing statute, 18 U.S.C. § 3621(b), authorizes the BOP to designate a prisoner's place of confinement and provides that it may designate any available facility that meets "minimum standards of health and habitability" established by the

3

BOP. The court concludes the decision to exercise that discretion categorically was within the BOP's statutory authority and did not implicate a protected right.

Petitioner also alleges the decision to transfer him to a prison from a CCC placement violates ex post facto principles. The Ex Post Facto Clause prohibits the retroactive application of a law that either alters the definition of criminal conduct or increases the punishment for a crime. Lynce v. Mathis, 519 U.S. 433, 441 (1997).

The BOP regulation clearly does not alter the definition of petitioner's criminal conduct, nor is there any suggestion that placement in a prison will increase the penalty imposed on the petitioner. While the conditions of confinement in a prison setting no doubt will be more harsh, such a difference does not implicate the Ex Post Facto Clause. See California Dept. of Corrections v. Morales, 514 U.S. 499, 510 n. 6 (1995)(Ex Post Facto Clause does not "require that [] sentence be carried out under the identical legal regime that previously prevailed.")

Petitioner next challenges the BOP rule on equal protection grounds. To state an equal protection claim, a plaintiff must allege that the government has treated him differently than those who are similarly situated. See Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985). Because "[p]risoners are not a suspect class," and "[t]he status of incarceration is neither an

4

immutable characteristic, nor an invidious basis of classification," a rational basis test applies, and the petitioner must establish that the unequal treatment alleged is not rationally related to a legitimate governmental interest. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989)(citations omitted).

Here, petitioner and all other prisoners with more than 150 days remaining on their terms of imprisonment were redesignated to prison facilities, while those prisoners who had less than 150 days were not. Although the petitioner alleges that the distinction drawn by the BOP is arbitrary, the respondent points out that the 150-day period was established to address administrative claims involving objections to the redesignations arising from the new rule, and to avoid multiple transfers of those prisoners who soon would be eligible for placement in community confinement for service of the last 10% of their sentences pursuant to 18 U.S.C. § 3642(c). These decisions are a reasonable means to advance the BOP's statutory authority, and, given the "strong presumption of validity" that applies to review under the rational basis standard, FCC v. Beach Communications, Inc., 508 U.S. 307, 314 (1993), the court finds the BOP's action did not violate equal protection.

Finally, petitioner asserts that the BOP violated the Administrative Procedure Act in changing its policy by failing to

5

allow for notice and comment.

Pursuant to 5 U.S.C. § 553(b), administrative rules must be published in the Federal Registers.  This requirement, however, does not extend "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice...."  5 U.S.C. § 553(b)(3)(A)).

"'If the rule in question merely clarifies or explains existing law or regulations, it will be deemed interpretative.'" Farmers Telephone Co., Inc. v. FCC, 184 F.3d 1241, (10th Cir. 1999)(quoting Bailey v. Sullivan, 885 F.2d 52, 62 (3d Cir. 1989)).  "The interpretative rule exception reflects the idea that public input will not help an agency make the legal determination of what the law already is." Sizemore v. Marberry, 2005 WL 1684132 (E.D. Mich. 2005).

Here, the December 2002 memorandum issued by Deputy Attorney General Thompson was issued to clarify that the BOP's practice of designating a prisoner for placement in a CCC for the last six months of the prisoner's term was unlawful because the governing statute, 18 U.S.C. § 3624(c), limited CCC placement to the lesser of the last 10% of the offender's prison sentence or six months. The BOP instituted its revised CCC placement policy consistent with that memorandum shortly after its issuance.

The court is persuaded the BOP memoranda in question were interpretative, as these documents discussed the provisions of

6

the governing statute and why the BOP policy failed to strictly comply with its dictates.  Accordingly, the BOP was not required to give notice and an opportunity for comment.  See Dismas Charities, Inc., v. United States Department of Justice, 401 F.3d 666, 680 (6th Cir. 2005)(describing the BOP memoranda as "paradigm examples of interpretative rules").

## Conclusion

Having considered the record and arguments of the parties, the court concludes the petitioner is not entitled to habeas corpus relief.

IT IS THEREFORE ORDERED the petition for habeas corpus is dismissed and all relief is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED:  This 20th day of March, 2006, at Topeka, Kansas.


S/ Richard D. Rogers
RICHARD D. ROGERS
United States District Judge